UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**ROYAL CARIBBEAN CRUISES, LTD.,**

       Plaintiff,

v.                            Case No.: **3:15-cv-381-J-25MCR**

**royalcaribean.com,**
**royalcarribean.com**

       Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff's Motion for Default Judgment (Dkt. 16), Cruise Traffic, Inc.'s (Cruise Traffic) Response in Opposition (Dkt. 19), Cruise Traffic's Motion to Set Aside Entry of Defaults (Dkt. 17), Plaintiff's Response in Opposition (Dkt. 20), Cruise Traffic's Motion for Leave to File Reply (Dkt. 21), Cruise Traffic's Motion to Intervene (Dkt. 26), Plaintiff's Response in Opposition (Dkt. 27) and Cruise Traffic's Reply (Dkt. 31). Upon review, the Court finds as follows:

### I. Background

On March 26, 2015, Plaintiff Royal Caribbean Cruises, Ltd., filed its Complaint seeking *in rem* injunctive relief against the Defendant Domain Names "royalcaribean.com" and "royalcarribean.com" pursuant to the

Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (ACPA). At the time Plaintiff filed its Complaint, the information that the registrant of the Defendant Domain Names provided to the registrar alleged that the registrant was a resident of the Republic of India. (Dkt. 1, p. 3 and Dkt. 1-1, p. 3 and 7-8).

On June 25, 2015, no party having filed a response, a Clerk's Entry of Default against each defendant domain name was entered. (Dkts. 14 and 15). On June 30, 2015, Plaintiff filed a Motion for Default Judgment (Dkt. 16). On July 1, 2015, Cruise Traffic filed a Motion to Set Aside Entry of Default Judgment (Dkt. 17). Additionally, on July 13, 2015, Cruise Traffic filed an Opposition to Plaintiff's Motion for Default Judgment (Dkt. 19).

On August 11, 2015, the Court held a hearing on Plaintiff's Motion for Default Judgment (Dkt. 16), Interested Party, Cruise Traffic's Motion to Set Aside Entry of Default Judgment (Dkt. 17) and Cruise Traffic's Motion for Leave to Reply (Dkt. 21). Allison R. Imber, counsel appearing on behalf of Cruise Traffic, stated that Cruise Traffic possessed the necessary proof of standing. On December 1, 2015, having not received the necessary proof of standing, the Court issued an Order requiring Cruise Traffic to provide the appropriate documentation with its Reply (Dkt. 29). On December 10, 2015, Cruise Traffic filed its Reply. (Dkt. 31).

2

## II. Analysis

As a threshold matter, the Court will address Cruise Traffic's claim that this Court lacks subject-matter jurisdiction in this case (Dkt. 19). Subject-matter jurisdiction attacks come in two forms: (1) facial attacks; and (2) factual attacks. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (citation omitted). Facial attacks "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (citation omitted). However, factual attacks challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* The burden of proof when a party asserts the lack of subject-matter jurisdiction is on the party asserting jurisdiction. *See e.g. Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980).

15 U.S.C. § 1125(d)(2)(A) states that:

> **(2)(A)** The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if--
> **(i)** the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) of this section; and

3

> **(ii)** the court finds that the owner--
> **(I)** is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or
> **(II)** through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by--
> **(aa)** sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and
> **(bb)** publishing notice of the action as the court may direct promptly after filing the action.

U.S.C. § 1125(d)(2)(A). Facially, Plaintiff has sufficiently alleged a basis of subject matter jurisdiction. Cruise Traffic's interpretation of this statute is misplaced. Specifically, unlike the Plaintiff in *Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.com* that Cruise Traffic cites, where Plaintiff also named the corporate registrant as a defendant, in this case, Plaintiff's Complaint solely names the alleged offending websites. *Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.com*, 128 F. Supp. 2d 340 (E.D. Va. 2001). Additionally, as the registrant was found to have "personally" conducted business in Virginia through the subject websites, the Court found that *in personam* jurisdiction was proper via Virginia's long-arm statute. *Id.* at 351. Here, the registrant does not operate the subject websites and no other party is named as a defendant. Instead, Cruise Traffic seeks to intervene pursuant to Fed. R. Civ. P. 24(a)(2).

4

Jurisdiction is proper because the statute only requires that the "owner of a mark registered in the Patent and Trademark Office...is not able to obtain *in personam* jurisdiction over **a person who would have been a defendant** in a civil action under paragraph (1) (U.S.C. § 1125(d)(2)(A)(ii)(I); or...through due diligence was not able to find **a person who would have been a defendant** in a civil action under paragraph (1)" U.S.C. § 1125(d)(2)(A)(ii)(II). Although Cruise Traffic argues that "just because Bindu Joseph is listed as the registrant" it "does not mean she is the owner of the domains..." (Dkt. 31, p. 4), pursuant to U.S.C. § 1125(d)(1)(D), the domain name's "registrant and the registrant's authorized licensee" can be held liable "in a civil action by the owner of a mark...which is protected...." U.S.C. § 1125(d)(1)(A).

"*In rem* jurisdiction concerns the court's authority over the res—in this case, the domain names" Plaintiff seeks. *See Porsche Cars North America, Inc. v. Porsche.net,* 302 F.3d 248, 255, (4th Cir. 2002). "[T]he holder of a trademark must convince the court that *in personam* jurisdiction over a person is unavailable before an ACPA in rem action may proceed." *Id.* (citations omitted). Additionally, as *in rem* jurisdiction could otherwise be lost during the duration of a case, no matter how late *in personam* jurisdiction arose, the ACPA does not require the conditions that existed

5

when the court made the requisite statutory finding permitting *in rem* jurisdiction to continue throughout the litigation. *Id.* "[A]n *in rem* proceeding in which the property itself is the source of the underlying controversy between plaintiff and defendant...due process is satisfied" by assigning jurisdiction based on the location of the property. *Id.* at 260.

The record reflects that at the time Plaintiff filed this action, the address listed for the registrant, Bindu Joseph was in Kerala, India (Dkt. 20-1, p. 2 and Dkt. 20-5) and was not changed to an address within the United States until several months after the instant suit was filed. Consequently, as the registrant and having not personally used the subject websites to conduct business at the time Plaintiff filed its Complaint, Bindu Joseph constituted "a person who would have been a defendant in a civil action under paragraph (1)" that "the owner of a mark registered in the Patent and Trademark Office" was not able to obtain *in personam* jurisdiction over. U.S.C. § 1125(d)(2)(A)(ii).[1] Moreover, notwithstanding Plaintiff's efforts to serve the registrant, as the registrant failed to respond to Plaintiff's Complaint and has failed to allege any contact with Plaintiffs in

---

[1] *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 232 (4th Cir. 2002) ("[W]e believe this language is best understood as a shorthand reference to the current registrant of the domain name, who would be the defendant in any trademark action involving a domain name.").

her declaration, the registrant indeed was a person who would have been a defendant in a civil action under paragraph (1) that Plaintiff was not able to find through diligence. U.S.C. § 1125(d)(2)(A)(ii)(II). To the extent that Cruise Traffic argues that the registrant actually resides in the United States and Plaintiff is able to obtain *in personam* jurisdiction over her, by listing a foreign address as her contact information, the registrant culpably and willfully placed all on notice that *in personam* jurisdiction in the United States could not be had and thereby subjected herself to *in rem* jurisdiction regarding the Defendant Domain Names. The Court shall discuss its finding of bad faith later in this Order.

Importantly, as Plaintiff complied (*see* Dkt. 12) with this Court's Order authorizing service of process by email, overnight mail and publication (Dkts. 8 and 11), service was had. To the extent that Cruise Traffic argues that service was not perfected because the registrant did not receive service via the mail sent by Plaintiff, as Plaintiff followed the Court's Orders and used the mailing address provided to the websites' registrar by the registrant, service was perfected. *See* U.S.C. § 1125(d)(2)(A)(ii)(II). Further, the registrant is responsible for providing the correct mailing address to the domain registrar.

7

Plaintiff's argument that Cruise Traffic is attempting to avoid this
Court's jurisdiction by refusing to specifically allege that it is a registrant or
an authorized licensee and the registrant's subsequent changing of her
address from India to an address in the United States after this case was
filed, is well taken. Based on the record, in her capacity of what constitutes
an alleged agent of Cruise Traffic, the registrant willfully provided the
registrar with a foreign address in a bad faith attempt to avoid litigation.
First, after Plaintiff terminated its business relationship with Jai George, the
registrant of the Defendant Domain Names was changed to an individual
unknown to Plaintiff and a foreign address was listed for the registrant who
conducts no business and therefore fails to meet the minimum contacts
requirement as to allow the registrant to avoid *in personam* jurisdiction.
Importantly, as Jai George had transferred the Defendant Domain Names
to another registrant and could no longer receive compensation for booking
Royal Caribbean cruises (Dkt. 17, p. 3-4), Plaintiff had no reason to believe
that the Defendant Domain Names were still being improperly utilized to
divert consumers for financial gain. That is, the record does not include
any evidence that suggests that Plaintiff should have known that Cruise
Traffic or any other entity or individual utilized the Defendant Domain
Names to divert consumers to its website for profit by contracting with or

otherwise maintaining some type of compensation agreement with an authorized dealer of Royal Caribbean cruises. Additionally, any attempt at filing a claim without including the necessary foreign registrant would likely result in piecemeal litigation and/or a dismissal for failure to join an indispensable party.

Next, the registrant failed to accurately list her name as it appears on her North Carolina driver license she was issued on October 8, 2010. (*See* Dkt. 31-3, p. 66). Further, for years prior to Plaintiff instituting this action, the registrant failed to change her registration information to reflect that she actually resides within the United States. The record reflects that at some time prior to receiving her October 8, 2010, North Carolina driver license, Bindu Joseph's name was changed to Mary Joseph George and she began residing in Wake Forest, North Carolina. (Dkt. 31-3, p. 4). Moreover, as Plaintiff would not generally know that the registrant actually resided in the United States, if an *in rem* action were filed, the registrant or any other entity such as Cruise Traffic, could then make a factual attack upon the Court's subject-matter jurisdiction based on U.S.C. § 1125(d)(2)(A)(ii), resulting in the avoidance of any action to divest it of the subject websites.

Next, neither Cruise Traffic nor Bindu Joseph has provided an explanation as to why they waited until several months after this case was

9

filed to provide the domain registrar with the correct address for the registrant and failed to change the registrant's name to Mary Joseph George when the registrant changed her name and began to reside in the United States. Cruise Traffic alleges that Bindu Joseph has been the named registrant since August of 2005, is allegedly married to Joseph George, and has likely resided in the United States since the date of her marriage. As such, the Court cannot find a good faith basis for Cruise Traffic and Mary Joseph George's actions. Importantly, reasonable minds would not differ on the bad faith inferences arising from the facts of this case, *see Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990), and allowing this type of behavior would contravene the purpose of the statute. *Harrods Ltd.*, 302 F.3d at 232. Consequently, Plaintiff has proven by "a preponderance of the evidence" that the trial court has subject matter jurisdiction. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

### a. Cruise Traffic's Motion to Intervene

Cruise Traffic argues that: (1) it is the owner and operator of the Defendant Domain Names and therefore has an interest in this case; (2) Plaintiff seeks to divest Cruise Traffic of its ownership of the subject domains; (3) its Motion is timely as the Eleventh Circuit has found motions to intervene that were filed seven months after the Complaint timely; (4) as

10

no discovery has taken place and no significant motion practice save for Plaintiff's attempts to obtain a default judgment, Plaintiff will not be prejudiced by the timing of the Motion; (5) Plaintiff was advised of Cruise Traffic's ownership of the domains prior to bringing this action *in rem*; and (6) there are no alternative means to protect Cruise traffic's interest in the Defendant Domain Names.

Plaintiff's arguments include: (1) Cruise Traffic is asking the Court to approve an intentional deception and shell game; (2) there is no basis for intervention as of right; (3) Cruise Traffic's Motion is untimely; (4) Cruise Traffic should have known of its alleged interest in this case when notice was sent to Bindu Joseph by FedEx International Priority Mail to the residential address and by email to the email address provided to the domain registrar on April 6, 2015; (5) Plaintiff will be prejudiced as a result of Cruise Traffic's Failure to petition sooner; (6) Cruise Traffic will not be prejudiced if the Motion is denied; (7) Cruise Traffic's bad faith efforts militate against granting the Motion; (8) Cruise Traffic has no legally protectable interest so protection by existing parties is irrelevant; (9) Cruise Traffic implemented a shell game in an effort to prevent Plaintiff from protecting its interest in its trademarks; (10) Cruise Traffic admits that Bindu Joseph does not actually have any involvement in the Defendant Domain

Names; (11) the Internet Corporation for Assigned Names and Numbers (ICANN) requires that registrant information be kept current and accurate as to provide notice of domain ownership; (12) the address the registrant provided was fake or intentionally incomplete; (13) having chosen Bindu Joseph as their agent to act as registrant and receive legal notice, Cruise Traffic cannot now complain that its straw person cannot adequately protect its supposed interests; (14) although the registrant was listed as Bindu Joseph of India, she really is a woman named Mary Joseph George who lives in the United States; and (15) Cruise Traffic has not explained why it is not listed as the registrant.

Rule 24(a) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) which governs the intervention of right provides in part:

> On timely motion, the court must permit anyone to intervene who:
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The Eleventh Circuit Court of Appeals has interpreted this rule to require that a party seeking intervention of right must "demonstrate that: (1) his application to intervene is timely; (2) he has an

interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004).

Timeliness is to be determined from all of the circumstances of the case. *Reeves v. Wilkes*, 754 F.2d 965, 968 (11th Cir.1985). The court may also consider: (1) when the movants should have known of their interest; (2) the prejudice to the movants if the motion is denied; (3) the prejudice to existing parties caused by the delay; and (4) any unusual circumstances. *U.S. v. Coffee County Bd. of Educ.*, 134 F.R.D. 304, 308-09 (S.D. Ga. 1990). Here, there are unusual circumstances. Cruise Traffic appears to argue that the listed registrant, Bindu Joseph, now known as Mary Joseph George, is solely its agent and has no ownership rights to the Defendant Domain Names. Notably, although Cruise Traffic argues sole ownership and usage rights of the Defendant Domain Names, it also attempts to distance itself from being labeled a registrant and/or licensee thereof as to avoid this *in rem* action while also arguing that the registrant will not adequately protect its interests. As such, Cruise Traffic argues that it uses the Defendant Domain Names that it allegedly owns without the

13

permission of the registrant it chose to act as its agent. This argument is without merit.[2] However, to the extent that Cruise Traffic objects to this finding, absent the Court finding that it is the registrant or a licensee, Cruise Traffic would likely not have a "direct, substantial and legally protectable" interest relating to the Defendant Domain Names and therefore have no basis for intervention as of right. *Hawes v. Gleicher*, 745 F.3d 1337, 1339 n. 5 (11th Cir.2014)(citing *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005).

A legally protectable interest "is something more than an economic interest...," it must "be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *Mt. Hawley Ins. Co.*, 425 F.3d at 1311. As such, "a legally protectable interest is an interest that derives from a legal right." *Id.* 11 U.S.C. § 1125 implies that a registrant and its licensee have a legally protectable interest and the WHOIS[3] system

---

[2] Additionally, changes were made to the registrant's contact information on July 8, 2015. Although Bindu Joseph changed her address from Kerala, India to Raleigh, North Carolina, and the listed email address from bindujsph@yahoo.co.in to jgeorge@jmiassociates.com, she failed to change her name from Bindu Joseph to Mary Joseph George, her legal name in the United States.

[3] WHOIS "is the system that asks the question, *who is* responsible for a domain name or an IP address." ICANN WHOIS, https://whois.icann.org/en/about-whois (last visited March 4, 2016). The

suggests that domain ownership is synonymous with being a domain name's registrant. (See Cruise Traffic's Reply, Dkt. 31-1, p. 41 and 45).[4] However, as Cruise Traffic argues that it is the sole owner and the registrant has no ownership interest in the Defendant Domain Names, the actions of the registrant, as agent for Cruise Traffic, shall be imputed to Cruise Traffic.

As the record has developed, so has support for Plaintiff's argument that Bindu Joseph, now known as Mary Joseph George, is but a "straw person" that is part of a shell game designed to prevent Plaintiff from enforcing its rights. Specifically, but for aforementioned acts of Cruise Traffic, its agents and alleged predecessors in interest, the defaults would not have occurred and Cruise Traffic would possess the clean hands necessary to assert equitable defenses. Epstein v. Epstein, 915 So.2d 1272, 1275 (Fla. 4th DCA 2005); Southern Grouts & Mortars, Inc. v. 3M Company, No.:07-61388-CIV, 2008 WL 4346798, at *7 (S.D. Fla. Sept. 17, 2008) ("the actions (or inactions) of the party alleged to have unclean

identifying and contact information required to register a domain name is referred to as "WHOIS data." Id.

[4] Cruise Traffic's filing provides the "Whois [sic] History for Royalcarribean.com." The history specifically states "Lookup Domain Ownership History."

15

hands...must be egregious...such as when a party asserting laches is actually responsible for the delay in bringing suit, or where that same party engendered reliance by the opposing party through concealment or misrepresentation.") (citations omitted). Further, if Jai George truly believed that he was acting within his rights and that evidence existed in support, he would not have transferred the Defendant Domain names to a registrant with a foreign address and the rightful owner of the Defendant Domain Names would have long been determined. As such, the bad faith actions of Jai George, Cruise Traffic and its agents caused the peril Cruise Traffic now complains of. Based on the current record, it has become clear that were the Court to allow full intervention, Cruise Traffic's bad faith actions would reward Cruise Traffic's bad behavior. Both Cruise Traffic and the registrant admit that Cruise Traffic owns and controls the Defendant Domain Names; therefore, but for Cruise Traffic's failure to provide accurate registrant information, Cruise Traffic would have known of its interest in this case long ago. However, in an abundance of caution, the Court will allow Cruise Traffic to intervene for the sole purpose of responding to Plaintiff's Motion for Default Judgment (Dkt. 16).

### b. Cruise Traffic's Motion to Set Aside Defaults

The Court shall take judicial notice of Cruise Network, Inc. and Cruise

Traffic's corporate filings with the North Carolina Department of the

Secretary of State.[5]  Cruise Network, Inc.'s Articles of Dissolution were filed

on September 18, 2009.  Notably, on October 22, 2015, the North Carolina

Department of Revenue issued a Notification of Revenue Suspension to

Cruise Network, Inc. for failure to comply with the requirements of North

Carolina General Statute § 105-230(a).  As such, "[a]ny act performed or

attempted to be performed while the entity is suspended is invalid and of no

---

[5] The Court takes Judicial Notice of the corporate filings of Cruise Network,
Inc. and Cruise Traffic, Inc. as they are public records that are not subject
to reasonable dispute and are "capable of ready determination by resort to
sources whose accuracy cannot be reasonably questioned." *Horne v.
Potter*, 392 Fed. App'x 800, 802 (11th Cir. 2010); *see also Bryant v. Avado
Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).  Cruise Network, Inc.'s
corporate filings were obtained from
http://www.secretary.state.nc.us/Search/filings/5472018, last visited on
March 18, 2016.  Cruise Traffic, Inc.'s corporate filings were obtained from
http://www.sosnc.gov/Search/filings/9213373, last visited on March 18,
2016.  Notably, after receiving Plaintiff's November 9, 2012, Cease and
Desist letter (Dkt. 17-1, p. 6-7), Cruise Traffic failed to file its Annual
Reports for 2012 through 2014.  Consequently, the North Carolina
Department of the Secretary of State sent Cruise Traffic a Notice of Annual
Report on July 6, 2015, that went unanswered and Cruise Traffic was
administratively dissolved on September 28, 2015.  Not until after this Court
issued its December 1, 2015, Order (Dkt. 29), requiring Cruise Traffic to
detail specific corporate information, did Cruise Traffic file the required
Annual Reports and obtain reinstatement on December 3, 2015.

effect until the entity is reinstated by the North Carolina Department of Revenue pursuant to N.C.G.S. § 105-232." N.C.G.S. § 105-230(b).

Cruise Traffic's arguments include that: (1) it has meritorious laches, license, waiver and estoppel defenses; (2) it would suffer severe evidentiary and economic prejudice as many years have passed since the Defendant Domain Names were first registered and used; (3) Jai George and his companies have been using the domains at issue for over fifteen years; (4) Plaintiff specifically approved of and encouraged Mr. George's use and ownership of the Defendant Domain Names from 1999 until the end of 2004; (5) it has meritorious defenses against Plaintiff's ACPA Claims on the merits; (6) it first became aware of the Complaint on June 21, 2015, and retained counsel on June 26, 2015; (7) there is good cause for setting aside the defaults; and (8) neither Jai George nor Cruise Traffic purchased, used, or trafficked the domain names with a bad faith intent to profit.

Plaintiff argues that: (1) Cruise Traffic is not the registrant of the Defendant Domain Names; (2) the registrant of the Defendant Domain Names is identified in WHOIS records as Bindu Joseph; (3) Cruise Traffic is not the registrant of www.rccreservations.com, which is the website to which the Defendant Domain Names refer consumers to, and about which Plaintiff alleges is the "Competing Website" (see Dkt. 20-4, p. 10-12); (4)

18

Cruise Traffic lacks standing to challenge its *in rem* ACPA claim; (5) the term registrant is synonymous with owner; (6) the Court must assess *in rem* jurisdiction based on the facts as they exist at the time of filing; (7) the WHOIS registrant information for the Defendant Domain Names at the time of filing is the only information relevant to *in rem* jurisdiction; (8) at the time the Complaint was filed, the registrant for the Defendant Domain Names listed her name as Bindu Joseph, with an address in India; and (9) the Defendant Domain Names are part of a shell game designed to prevent Plaintiff from enforcing its rights.

Fed. R. Civ. P. 55(c) provides that a "court may set aside an entry of default for good cause...." "'Good cause' is a mutable standard, varying from situation to situation. It is also a liberal one—but not so elastic as to be devoid of substance...." *Compania Interamericana Export–Import, S.A. v. Compania Dominicana De Aviacion*, 88 F.3d 948, 951 (11th Cir.1996) (citations omitted). Additionally, "good cause is not susceptible to a precise formula, but some general guidelines are commonly applied." *Id.* Courts generally consider: (1) whether the default was culpable or willful; (2) whether setting it aside would prejudice the opposing party; (3) whether the defaulting party presents a meritorious defense; and (4) whether the defaulting party acted promptly to correct the default. *Id.* Further, a court

may examine other factors "as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." *Id.* (citation omitted).

However, a court may refuse to set aside a default if a party has no meritorious defense and where the default is willful or due to bad faith. *Id.* (citing *Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 194–95 (6th Cir.1986)). Although deciding cases on their merits is favored over defaults, *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003), "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Compania Interamericana Export–Import, S.A.*, 88 F.3d at 951-52.

The Court finds that the default was culpable, due to bad faith and therefore willful. As previously noted, but for Cruise Traffic's failure to provide accurate registrant information, Cruise Traffic would not have defaulted. Further, the actions of Cruise Traffic, its agents and predecessors in interest were intentionally designed to delay, if not prevent, Plaintiff from instituting a legal action. *Id.*

Based on admissions by Cruise Traffic at the hearing, the allegations within its filings, the Declarations attached to filings by Cruise Traffic and

several undisputed allegations made by Plaintiff, the Court has determined that neither Cruise Traffic, its predecessors in interest, Jai George nor Mary Joseph George have demonstrated the "clean hands" required to assert equitable defenses such as waiver, acquiescence, estoppel and laches. *Epstein v. Epstein*, 915 So.2d 1272, 1275 (Fla. 4th DCA 2005); *Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So.2d 1098, 1105 (Fla. 5th DCA 2006). Further, Cruise Traffic freely admits that subsequent to Plaintiff demanding the transfer of the Defendant Domain Names to it and terminating its business arraignment with him, Jai George transferred the Defendant Domain Names to an individual with a foreign address, that does not conduct any business as to violate Plaintiff's trademark and whose familial relationship to Jai George was unknown to Plaintiff. As such, any argument that Cruise Traffic was licensed by Plaintiff fails and it becomes apparent that the transfer of the Defendant Domain Names was designed to delay, if not prevent, Plaintiff from instituting a legal action to have the Defendant Domain Names transferred. *Compania Interamericana Export–Import, S.A.*, 88 F.3d at 951-52.

As Cruise Traffic admits that it utilized the Defendant Domain Names for the sole purpose of directing traffic to rccreservations.com, the actual

homepage of the website allegedly[6] developed by Cruise Traffic, Cruise

Traffic did not spend time and resources developing the Defendant Domain

Names as they are but misspellings of Plaintiff's trademarked name that

Plaintiff has spent a great deal of time and resources developing. Further,

although Cruise Traffic does not use the Defendant Domain Names to sell

cruises to Plaintiff's competitors, its use of the Defendant Domain Names is

designed to divert customers from Plaintiff's website to its website for

financial gain. Specifically, but for Cruise Traffic's use of the Defendant

Domain Names, Plaintiff would not be required to pay a commission for the

cruises booked by customers that were redirected to the website

---

[6] Cruise Traffic's pleadings state that it "owns" the subject websites, including rccreservations.com. However, Cruise Traffic: (1) is not listed as the registrant for any of the Defendant websites; (2) has not alleged that it is a licensee; and (3) is not the registrant of rccreservations.com. Cruise Network, Inc., a company in which Articles of Dissolution were filed on September 18, 2009, and is currently under a revenue suspension by the State of North Carolina, is the registrant of rccreservations.com. Further, unlike the Articles of Incorporation for Cruise Network, Inc. which state that "Cruise Network, Inc. will purchase the assets of the business entity George Enterprises International, Inc., d/b/a ABC Cruise 'N Travel...," Cruise Traffic does not mention any asset purchase in its Articles of Incorporation. Instead, Cruise Traffic alleges that all of the assets of Cruise Network were transferred to Cruise Traffic and provides the Declaration of Jai George to evidence such. (Dkt. 31, p. 2). As Cruise Traffic failed to provide the Court with any corporate documentation commemorating Cruise Traffic's purchase of the assets of Cruise Network, Inc., the Court must solely rely on Cruise Traffic's allegation and the Declaration of Jai George (Dkt. 31-1, p. 2-4).

22

rccreservations.com because a spelling mistake diverted them from Plaintiff's website to Cruise Traffic's website instead. Although Plaintiff pays this commission directly to whichever registered cruise agent rccreservations.com diverts the customer to,[7] Cruise Traffic ultimately receives compensation based on their deal with that registered cruise agent. Consequently, not only is Plaintiff required to pay a commission that it otherwise would not, Cruise Traffic's actions also circumvent Plaintiff's ability to control who profits from the sale of its cruises. As the record reflects Plaintiff's intent to end its business relationship with Jai George and prohibit him from profiting from the sale of its cruises (Dkt. 17, p. 3-4), Cruise Traffic was fully aware that it was acting against Plaintiff's wishes. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 509 F. Supp. 2d 1337, 1350 (N.D. Ga. 2007) (finding no bad faith at the time Defendants registered the domain names as there was an agreement between the parties while recognizing that bad faith can be found based on Defendant's actions subsequent to the termination of the parties' agreement).

Plaintiff has shown that it will be prejudiced if the Court sets aside the defaults. In this case, the Defendant Domain Names continue to divert

---

[7] Cruise Traffic admits that rccreservations.com directs consumers to cruises.com, an authorized Royal Caribbean Cruises Ltd. cruise agent, to book their cruises. (Dkt. 17, p. 4, n. 1).

consumers looking for Plaintiff's website to rccreservations.com, where they are then diverted to cruises.com, one of Plaintiff's authorized agents that Cruise Traffic alleges compensates it for cruises booked by the consumers it diverts to the website. As such, Plaintiff has and will continue to lose income that it cannot recover for every cruise booked by diverted consumers. Additionally, the Court having found that neither Cruise Traffic, its predecessors in interest, Jai George nor Mary Joseph George have demonstrated the "clean hands" required to assert equitable defenses such as waiver, acquiescence, estoppel and laches, *Epstein*, 915 So.2d at 1275, and that no other meritorious defense applies, the delay and expense in vindicating Plaintiff's rights amounts to an undue prejudice. *Carlisle v. Nat'l Com. Services, Inc.*, 2015 WL 4092817, No. 1:14-cv-515-TWT, at *15 (N.D. Ga. July 7, 2015). Based on the record, Cruise Traffic has failed to show good cause for setting aside the defaults. *Compania Interamericana Export–Import, S.A.*, 88 F.3d at 951-52.

### c. Default Judgment

Plaintiff argues that: (1) this Court possesses *in rem* jurisdiction over the Defendant Domain Names; (2) service pursuant the Court's Order has occurred; (3) a Clerk's Default has been entered for each Defendant Domain Name; (4) the Defendant Domain Names violate Plaintiff's

exclusive rights in the Royal Caribbean Marks under 15 U.S.C. §§ 1114,
1125(a); (5) the Defendant Domain Names are used with a bad faith intent
to profit from the goodwill and reputation of the Royal Caribbean Marks;
and (6) Plaintiff has established its cause of action for cybersquatting under
U.S.C. § 1125(d)(2)(A) and its right to a transfer of ownership in the
Defendant Domain Names from the current registrant. In sum, Cruise
Traffic reiterates many of the arguments contained within its Motion to Set
Aside Entry of Default (Dkt. 17) and Motion to Intervene (Dkt. 26). As such,
the Court will not revisit arguments previously analyzed in this Order.

Pursuant to Fed. R. Civ. P. 55(b)(2), a district court may enter a default
judgment against a properly served defendant who fails to defend or
otherwise properly appear. *Directv, Inc. v. Griffin*, 290 F. Supp. 2d 1340,
1343 (M.D. Fla. 2003). Entry of default by the Clerk does not in itself warrant
the entry of default judgment by the Court. *Nishimatsu Constr. Co., Ltd. v.
Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[8] When considering
a motion for default judgment, the Court must examine jurisdiction, liability
and damages. *Joe Hand Promotions Inc. v. ADJ Entity LLC*, No. 3:11-cv-

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en
banc), the Eleventh Circuit adopted as binding precedent the decisions of
the former Fifth Circuit rendered before the close of business on
September 30, 1981.

90(CAR), 2011 WL 4102314 at *2 (M.D. Ga. Sept. 14, 2011). "There must be a sufficient basis in the pleadings for the judgment entered." *Id.* "A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact, and bars the defendant from contesting those facts on appeal." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (citing *Nishimatsu Constr. Co., Ltd.*, 515 F.2d at 1206).

"In determining whether to enter a default judgment against a defendant, a court should consider: (1) the amount in controversy; (2) whether material issues of fact or issues of substantial public importance exist; (3) whether the default is largely technical or substantive in nature; (4) whether the plaintiff has been substantially prejudiced by the delay involved; and (5) whether the grounds for default are clearly established or are in doubt." *J & J Sports Productions, Inc. v. Arboleda*, No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859, at *2 (M.D. Fla. October 27, 2009).

"A court may impose sanctions for litigation misconduct under its inherent power." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009). However, this power must be exercised with restraint and discretion. *Id.* "The key to unlocking a court's inherent power is a finding of bad faith." *Id.* (citation omitted). "A party demonstrates bad faith by, *inter alia*, delaying or disrupting the litigation...." *Id.*

The Court held an evidentiary hearing in which Cruise Traffic was allowed to appear before ruling on Plaintiff's Motion. (Minute Entry, Dkt. 23). Further, the Court gave the parties the opportunity to submit evidence, and the material facts were not in dispute. Plaintiff has clearly established that: (1) it owns the Royal Caribbean trademark; (2) through the expenditure of significant resources, Plaintiff's trademark possesses the requisite degree of recognition; (3) the Defendant Domain Names violate Plaintiff's exclusive rights in the Royal Caribbean trademark as they are significantly similar such that there is no doubt that they intended to create an association with Plaintiff's famous mark with the intent to profit by diverting customers that misspelled Royal Caribbean to a third party website that received a commission for booking cruises; (4) as Mr. George was a Royal Caribbean cruise agent (Cruise Traffic's Response, Dkt. 19, p. 2) at the time Plaintiff allowed him to register the Defendant Domain Names, as owner of the Royal Caribbean Trademark, Plaintiff was within its rights to allow its employees or an independent contractor to utilize its Trademark to perform the duties in which Plaintiff hired Mr. Jai George to do; and (5) the Defendant Domain Names continued to divert customers that misspelled Plaintiff's Trademark to a third party website for profit after Mr. Jai George's affiliation with Plaintiff was terminated and Plaintiff revoked its consent. In sum, The Court has

examined jurisdiction, liability and damages and determined that there is "a sufficient basis in the pleadings for the judgment entered." *Joe Hand Promotions Inc.*, 2011 WL 4102314 at *2. Moreover, the Court has also considered the five (5) factors mentioned in *J & J Sports Productions, Inc.* and determined that judgment is proper. *J & J Sports Productions, Inc.*, 2009 WL 3490859, at *2.

As previously explained, neither Cruise Traffic, its predecessors in interest, Jai George nor Mary Joseph George have demonstrated the "clean hands" required to assert equitable defenses such as waiver, acquiescence, estoppel and laches. *Epstein v. Epstein*, 915 So.2d 1272, 1275 (Fla. 4th DCA 2005); *Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So.2d 1098, 1105 (Fla. 5th DCA 2006). Importantly, as Plaintiff's suit is a civil claim in equity in which the available remedies are limited to "a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to Plaintiff," U.S.C. § 1125(d)(2)(D)(i), there is no right to a jury trial and the Court is the finder of fact. *See Adidas AG v. 2013jeremyscottadidas.com*, No. 2014 WL 799132, at *8 (S.D. Fla. Feb. 28, 2014) (finding that the broad equity powers of courts have not limited remedies for *in rem* actions to the transfer or surrender of domain names). Further, as both parties have attached documentation supporting their

arguments and Cruise Traffic's Motion to Set Aside Entry of Default includes

a Motion to Dismiss for lack of subject matter jurisdiction (Dkt. 17, p. 13- 15),

the Court considered all of the extrinsic evidence presented by the parties

and weighed the facts pursuant to Fed. R. Civ. P. 12(b)(1). *Odyssey Marine*

*Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169

(11th Cir. 2011).

   The Court has previously explained that Cruise Traffic has engaged in

behavior that has delayed and disrupted the litigation and is therefore in bad

faith. *Eagle Hosp. Physicians, LLC*, 561 F.3d at 1306 (11th Cir. 2009).

Notably, on August 11, 2015, the Court held a hearing regarding Plaintiff's

Motion for Default Judgment (Dkt. 16), Cruise Traffic's Motion to Set Aside

Entry of Default (Dkt. 17) and Cruise Traffic's Motion for Leave to Reply (Dkt.

21). Importantly, Plaintiff's Response (Dkt. 20) includes its claims that Cruise

Traffic, its agents and alleged predecessors in interest are actually

responsible for the delay in bringing suit, purposefully concealed and

misrepresented the true owner of the Defendant Domain Names and

therefore acted in bad faith. Similarly, Plaintiff's Response (Dkt. 27) to Cruise

Traffic's Motion to Intervene also alleges bad faith. Both of Plaintiff's

Responses assert that default judgment is proper and Cruise Traffic's bad

faith actions should prevent it from becoming a party to this litigation.

Further, the Court granted (see Order, Dkt. 29) Cruise Traffic's Motion for Leave to File a Reply (Dkt. 28), which provided Cruise Traffic with yet another opportunity to explain its actions. Although the Court agrees with Plaintiff, instead of sanctioning Cruise Traffic by entering Default Judgment solely relying on the well-plead allegations of Plaintiff's Complaint, in showing restraint, the Court allowed Cruise Traffic the opportunity to be heard while also making sure that the result would be fair and just. Moreover, in fairness, the Court chose to allow Cruise Traffic an opportunity to file a Response in Opposition (Dkt. 19), of which the Court carefully considered in making its final determination. Unfortunately for Cruise Traffic, its own allegations, arguments, and attached exhibits in conjunction with its failure to address many of Plaintiff's bad faith claims, provided additional support for Plaintiff's claims and ultimately proved more damaging than the well-plead allegations contained in Plaintiff's Complaint. Accordingly, it is

**ORDERED:**

1. Plaintiff's Motion for Default Judgment (Dkt. 16) is **GRANTED**.

2. Cruise Traffic, Inc.'s Motion for Leave to File Reply (Dkt. 21) is **DENIED**.

3. Defendant Cruise Traffic, Inc.'s Motion to Set Aside Entry of Defaults (Dkt. 17) is **DENIED**.

4.    Cruise Traffic, Inc.'s Motion to Intervene (Dkt. 26) is **GRANTED** to the extent that the Court considered all of the arguments and evidence Cruise Traffic, Inc. presented in making its decision.

5.    **NETWORK SOLUTIONS, LLC** is Ordered to transfer the Defendant Domain Names royalcaribean.com and royalcaribbean.com to Plaintiff **ROYAL CARIBBEAN CRUISES LTD. within seven (7) days** of its receipt of this Order.

6.    The Clerk is directed to enter judgment in favor of Plaintiff **ROYAL CARIBBEAN CRUISES LTD.** and to close the file.

**DONE AND ORDERED** this 29 day of March , 2016.

HENRY LEE ADAMS, JR.
United States District Judge

Copies to:  Counsel of Record

31